UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SOO LINE RAILROAD COMPANY, <br> d/b/a CANADIAN PACIFIC, <br><br> Plaintiff, <br><br> v. <br><br> CONSOLIDATED RAIL CORPORATION, *et al.*, <br><br> Defendants. | Case No. 2:17-cv-106 |

## OPINION AND ORDER

This matter is before the court on the Motion of Defendants Consolidated Rail Corporation, Norfolk Southern Railway Company, and CSX Transportation, Inc., to Dismiss the Amended Complaint and to Dismiss or Strike the Amended Complaint's Requests for Relief [DE 77] filed by the defendants, Consolidated Rail Corporation, Norfolk Southern Railway Company, and CSX Transportation, Inc., on August 3, 2017. For the following reasons, the motion is **GRANTED in part and DENIED in part.**

*Background*

The plaintiff, Soo Line Railroad Company, d/b/a Canadian Pacific (CP), filed this state-law action alleging primary and secondary liability for breaches of fiduciary duties. The Indiana Harbor Belt Railroad Company (IHB) with the defendants, Consolidated Rail Corporation (Conrail), Norfolk Southern Railway Company (NSR), and CSX Transportation, Inc. (CSXT) entered into a Master Trackage Rights Agreement. IHB is a switch carrier that operates in the Chicago area, and its main shareholders are CP and Conrail. The trackage rights agreement

allows IHB to operate, for a fee, on tracks owned by Conrail, NSR, and CSXT (defendants). Conrail's ultimate parents are Norfolk Southern Corporation and CSX Corporation.

CP, a minority shareholder of IHB, has alleged that the revised trackage rights agreement charges IHB unfair rents and that Conrail, the majority shareholder of IHB, and others wrongfully caused IHB to accept those rents. CP has indicated that its claims raise matters of corporate misconduct and breaches of corporate fiduciary duties. CP has alleged that Conrail, NSR, and CSXT, along with their intermediate and ultimate parent holding companies and members of IHB's board of directors, breached their fiduciary duties by putting IHB at financial risk and adopting substantially different terms than those recommended by IHB's management and consultants. Further, CP has alleged that IHB management was coerced to change its position and was compelled to adopt the rental rates included in the revised trackage rights agreement.

A 1906 Agreement existed between IHB and the predecessors of Conrail, NSR, and CSXT, which gave IHB the right to operate for 99 years on the defendants' properties at a fixed annual rent. Conrail would reimburse IHB for operating and maintenance expenses (O&M expenses) that IHB incurred. The 1906 Agreement terminated in 2005. CP has alleged that the agreement remained unchanged until 1999 when Conrail stopped invoicing IHB for rent. Therefore, IHB stopped making rental payments, as well as Conrail stopped paying O&M expenses in 1999.

The parties began discussing a new trackage rights agreement in 2011, but they were unable to agree on proposed rents. IHB management hired an independent appraiser and/or consultant to recommend a rent amount. CP has alleged that on December 7, 2016, the IHB Board, along with the majority directors who acted as the defendants' agents, agreed and passed

the IHB Board Resolution. CP has indicated that shortly thereafter the defendants sought to undo the agreement, and therefore have threatened IHB's operations, undermined the IHB Board Resolution, and continued to demand exorbitant rent payment increases.

At a February 1, 2017 special board meeting, IHB management withdrew its support for the IHB Board Resolution. At the meeting, a new draft trackage rights agreement and a proposed resolution to adopt the Revised Master Trackage Rights Agreement were provided. The majority directors, over the minority directors' objections, approved the proposed resolution and the Revised Master Trackage Rights Agreement. CP has alleged that the defendants engaged in a pattern of coercive and oppressive behavior that was adverse to IHB's interests, including but not limited to, self-dealing, unauthorized conduct, refusal to disclose material information, demanding and approving the onerous Revised Master Trackage Rights Agreement while refusing to declare any dividends, threatening to withdraw operating rights without legal justification, and other acts constituting breaches of their fiduciary duties under Indiana law.

CP's requests for relief include compensatory and punitive damages, disgorgement of any ill-gotten profits resulting from IHB's payments under the Revised Master Trackage Rights Agreement, rescission of the Revised Master Trackage Rights Agreement, and an injunction compelling the defendants to implement and enforce the IHB Board Resolution. CP also requests O&M Expenses that Conrail was obligated to pay pursuant to the terms of the 1906 Agreement and reasonable attorneys' fees.

The defendants have argued that CP's claims and requested remedies are preempted by the ICC Termination Act, 49 U.S.C. 10101, *et seq*. The defendants contend that under the Termination Act, CP may not use state tort law to challenge the terms of the trackage rights agreement, which are exclusively within the Surface Transportation Board's (STB) jurisdiction.

Therefore, the defendants assert that the Amended Complaint has failed to state a claim for relief. Also, the defendants have requested that CP's request for O&M expenses relating to the 1906 trackage rights agreement be dismissed, as well as CP's request for attorneys' fees. CP filed a response in opposition on October 3, 2017, and the defendants filed a reply on October 31, 2017.

*Discussion*

**Federal Rule of Civil Procedure 12(b)(6)** allows for a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Allegations other than those of fraud and mistake are governed by the pleading standard outlined in Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement" to show that a pleader is entitled to relief. *See* **Cincinnati Life Ins. Co. v. Beyrer**, 722 F.3d 939, 946 (7th Cir. 2013). The Supreme Court clarified its interpretation of the Rule 8(a)(2) pleading standard in a decision issued in May 2009. While Rule 8(a)(2) does not require the pleading of detailed allegations, it nevertheless demands something more "than an un-adorned, the-defendant-unlawfully-harmed-me accusation." **Ashcroft v. Iqbal**, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). In order to survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" **Iqbal**, 556 U.S. at 678 (quoting **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); **Cincinnati Life Ins.**, 722 F.3d at 946 ("The primary purpose of [Fed.R.Civ.P. 8 and 10(b)] is to give defendants fair notice of the claims against them and the grounds supporting the claims.") (quoting **Stanard v. Nygren**, 658 F.3d 792, 797 (7th Cir. 2011)); **Peele v. Clifford Burch**, 722 F.3d 956, 959 (7th Cir. 2013) (explaining that one sentence of facts combined with boilerplate

4

language did not satisfy the requirements of Rule 8); *Joren v. Napolitano*, 633 F.3d. 1144, 1146 (7th Cir. 2011). This pleading standard applies to all civil matters. *Iqbal*, 556 U.S. at 684.

The decision in *Iqbal* discussed two principles that underscored the Rule 8(a)(2) pleading standard announced by *Twombly*. *See Twombly*, 550 U.S. at 555 (discussing Rule 8(a)(2)'s requirement that factual allegations in a complaint must "raise a right to relief above the speculative level"). First, a court must accept as true only *factual* allegations pled in a complaint—"[t]hreadbare recitals of the elements of a cause of action" that amount to "legal conclusions" are insufficient. *Iqbal*, 556 U.S. at 678. Next, only complaints that state "plausible" claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. If the pleaded facts do not permit the inference of more than a "mere possibility of misconduct," then the complaint has not met the pleading standard outlined in Rule 8(a)(2). *Iqbal*, 556 U.S. at 678–79; *see Brown v. JP Morgan Chase Bank*, 2009 WL 1761101, at *1 (7th Cir. June 23, 2009) (defining "facially plausible" claim as a set of facts that allows for a reasonable inference of liability). The Supreme Court has suggested a two-step process for a court to follow when considering a motion to dismiss. First, any "well-pleaded factual allegations" should be assumed to be true by the court. Next, these allegations can be reviewed to determine if they "plausibly" give rise to a claim that would entitle the complainant to relief. *Iqbal*, 556 U.S. at 678–79; *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010). Reasonable inferences from well-pled facts must be construed in favor of the plaintiff. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995); *Maxie v. Wal-Mart Store*, 2009 WL 1766686, at *2 (N.D. Ind. June 19, 2009) (same); *Banks v. Montgomery*, 2009 WL 1657465, at *1 (N.D. Ind. June 11, 2009) (same).

A complaint that lacks organization and coherence so that it is too confusing to understand the factual basis of the wrongful conduct also is subject to dismissal. *Cincinnati Life*

*Ins.*, 722 F.3d at 946.  The court assesses this by considering whether it can make out the essence of the claims.  *Cincinnati Life Ins.*, 722 F.3d at 946.  A complaint is not unintelligible simply because it contains repetitive and irrelevant matter.  *Cincinnati Life Ins.*, 722 F.3d at 946. "Rather, we have found complaints wanting when they present a 'vague, confusing, and conclusory articulation of the factual and legal basis for the claim and [take] a general "kitchen sink" approach to pleading the case.' . . . [D]ismissal is the appropriate remedy for district courts presented with 'a bucket of mud.'"  *Cincinnati Life Ins.*, 722 F.3d at 946–47 (quoting *Stanard*, 658 F.3d at 798).

A federal court sitting in diversity applies the substantive law of the forum state, so Indiana law applies here.  *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Ruiz v. Blentech*, 89 F.3d 320, 324 (7th Cir. 1996).  CP has asserted claims alleging breaches of fiduciary duties.  A claim for breach of fiduciary duty requires proof of three elements:  (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary.  *Farmers Elevator Co. of Oakville, Inc. v. Hamilton,* 926 N.E.2d 68, 79 (Ind. Ct. App. 2010).  Breach of fiduciary duty is a tort claim for injury to personal property.  *City of E. Chicago, Ind. v. E. Chicago Second Century, Inc.,* 908 N.E.2d 611, 618 (Ind. 2009).

CP has argued that the defendants have presented contradictory positions to the STB and to this court.  CP has claimed that the defendants indicated to the STB that the court was the proper forum to consider CP's breach of fiduciary duty claims, while now arguing that the claims are preempted by the Termination Act.  Moreover, CP asserts that the STB confirmed that the court has jurisdiction over CP's claims.  The defendants' contention is not that this court lacks jurisdiction, rather the defendants' position is that the court should decide the state-law dispute,

including whether CP's claims are preempted by the Termination Act. The defendants have indicated that the parties did not brief nor did the STB decide the issue of preemption.

On February 13, 2017, Conrail, CSXT, NSR, and IHB filed four combined verified notices of exemption pursuant to the class exemption at 49 C.F.R. § 1180.2(d)(7) for trackage rights over rail lines and ancillary trackage owned by Conrail, CSXT, and NSR. ***Ind. Harbor Belt R.R. Co. –Trackage Right–Consol. Rail Corp., CSX Transp., Inc. & Norfolk S. Ry. Co.,*** 2017 WL 992358, at *3 (STB March 13, 2017). The defendants indicated that the trackage rights are pursuant to a written trackage rights agreement entered into among IHB, Conrail, CSXT, and NSR. CP filed a petition to stay the effectiveness of the exemptions pending the outcome of this litigation. However, the STB denied the petition because CP had not demonstrated that irreparable harm would occur. The STB indicated that it was not issuing a ruling with respect to the pending litigation before the District Court. ***Ind. Harbor Belt R.R. Co.,*** 2017 WL 992358, at *3 ("The STB will deny CP's petition for stay but notes that the STB's exemption authority is permissive only and does not constitute a ruling with respect to the pending litigation before the District Court."). Accordingly, the STB did not resolve the preemption issue.

Congress passed the Termination Act in 1995 in order to deregulate the railroad industry. *See **Cedarapids, Inc. v. Chicago, Cent. & Pac. R.R. Co.**,* 265 F. Supp. 2d 1005, 1011 (N.D. Iowa 2003) ("Congress sought to federalize many aspects of railway regulation that previously had been reserved for the states in an effort to ensure the success of Congress' attempt to deregulate and thereby revitalized the industry."). This comprehensive set of statutes under 49 U.S.C. § 10101 *et seq.* were designed to supersede the Interstate Commerce Act (ICA). ***CSX Transp. Co. v. Novolog Bucks Cnty.,*** 502 F.3d 247, 251 (3d Cir. 2007). To promote the goal of

"federalizing" railroad regulation, Congress established the STB, an administrative agency charged with "administer[ing] the ICCTA." *See* **49 U.S.C. § 1301(a)** ("There is hereby established within the Department of Transportation the Surface Transportation Board.").

The defendants have argued that CP's state tort law claims are preempted by § 10501(b) of the Termination Act which provides the STB with exclusive jurisdiction over:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State.

Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

**49 U.S.C. § 10501(b).** The concluding sentence of § 10501(b) is an unmistakable statement of Congress's intent to preempt state laws touching on the substantive aspects of rail transportation. ***Engelhard Corp. v. Springfield Terminal Ry. Co.***, 193 F. Supp. 2d 385, 389 (D. Mass. 2002); ***Cedarapids, Inc. v. Chi., Cent. & Pac. R.R. Co.***, 265 F. Supp. 2d 1005, 1013 (N.D. Iowa 2003) ("[I]n enacting the ICCTA, Congress intended to occupy completely the field of state economic regulation of railroads."). Congress defined "transportation" broadly to include railroad property, facilities, and equipment "related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use." **49 U.S.C. § 10102(9).** The Act does not define "regulation," but the Seventh Circuit has observed that "Congress's intent in the Act to preempt state and local regulation of rail transportation has been recognized as broad and sweeping." ***Union Pac. R.R. Co. v. Chicago Transit Auth.,*** 647 F.3d 675, 678 (7th Cir. 2011). The only potential limitation on the face of the statute is the clause "with respect to

*regulation of rail transportation.*" **49 U.S.C. § 10501(b)** (emphasis added). Thus, some courts have argued that § 10501(b) does not apply to all "rail transportation," but only to regulation of such transportation. *See, e.g.,* **Fla. E. Coast Ry. v. City of West Palm Beach,** 266 F.3d 1324, 1331 (11th Cir. 2001); *but see also* **City of Auburn v. United States,** 154 F.3d 1025, 1030 (9th Cir. 1998) ("There is nothing in the case law that supports Auburn's argument that, through the ICCTA, Congress only intended preemption of economic regulation of the railroads.").

The factual circumstances of each claim must be considered to determine whether it is preempted by the Termination Act. *See* **In re Vermont Ry.,** 171 Vt. 496, 769 A.2d 648, 654 (2000) (noting that the Termination Act preemption determination is a fact-bound inquiry). The Termination Act preempts "all state laws that reasonably may be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." **N.Y. Susquehanna & W. Ry. Corp. v. Jackson**, 500 F.3d 238, 252 (3d Cir. 2007) (quoting **Fla. E. Coast Ry. Co. v. City of W. Palm Beach**, 266 F.3d 1324, 1331 (11th Cir. 2001)); *see also* **Adrian & Blissfield R. Co. v. Vill. of Blissfield**, 550 F.3d 533, 539 (6th Cir. 2008). Courts have held that a rail carrier asserting a state contract claim cannot use the preemptive effect of § 10501(b) to shield it from its own commitments. **Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.,** 297 F.Supp.2d 326, 333 (D. Me. 2003). However, CP has asserted state tort law claims. Therefore, "[w]here a tort claim would interfere with 'rail transportation' or 'operation' of railroad tracks or facilities, the regulation or claim is expressly preempted." **Benson v. Union Pac. R.R. Co.,** No. 2:08–cv–331–GEB–EFB, 2008 WL 2946331, at *3 (E.D. Cal. July 25, 2008) (collecting cases).

The Revised Master Trackage Rights Agreement is subject to the jurisdiction of the STB and may be carried out only with the approval and authorization of the STB. **49 U.S.C. §**

**11323(a)(6).** In interpreting the reach of § 10501(b) preemption, the STB and the courts have found that it prevents states or localities from intruding into matters that are directly regulated by the STB (e.g., railroad rates, services, construction, and abandonment). *Boston and Maine Corporation & Springfield Terminal Railroad Company- Petition for Declaratory Order,* 2013 WL 3788140, at *3 (July 19, 2013).

The defendants have argued that CP's state tort law action challenges the terms of the Revised Master Trackage Rights Agreement. Specifically, the defendants have argued that CP is challenging the fairness of the rental rates. The Amended Complaint has alleged that the Revised Master Trackage Rights Agreement includes rental rates that "grossly exceed market standards," and are "grossly in excess" of those approved by IHB management in the IHB Management Recommendation. Additionally, CP has asserted that Conrail, the Majority Directors, and the Parent Entities have failed to fulfill their fiduciary duties to ensure that the transaction was reasonable and not excessive.

Shareholders, officers, and directors in a closely held corporation owe the corporation a duty to deal fairly, honestly, and openly and must not be distracted from the performance of official duties by personal interests. *Rapkin Group, Inc. v. Cardinal Ventures, Inc.,* 29 N.E. 3d 752, 757 (Ind. Ct. App. 2015). The defendants have cited *G & N Aircraft, Inc. v. Boehm,* 743 N.E.2d 227, 239 (Ind. 2001), which held that in evaluating a claim of breach of duty in a closely held corporation the court will uphold a challenged transaction if: "(1) the material facts of the transaction and [the director's] interest were disclosed or known to [the minority], (2) the requisite corporate formalities necessary to authorize, approve, or ratify the transaction were followed, and (3) the transaction was fair to the corporation." Accordingly, under the third requirement, it is a breach of the majority shareholder's fiduciary duty to cause the corporation to

10

enter into an unfair transaction to the personal advantage of the majority shareholder. *G & N Aircraft, Inc.,* 743 N.E.2d at 239 ("To the extent G & N overpaid for parts, this would state a claim.").

CP has argued that the defendants' contention that it has challenged the reasonableness of the rental rates in the trackage agreement is misplaced. CP has indicated that while price is a factor, the fairness inquiry is much broader. Therefore, CP contends that the court would not need to determine what constitutes reasonable rents in order to determine that the transaction does not carry the "earmarks of an arm's length transaction." *See Pepper v. Litton,* 60 S.Ct. 238, 245, 308 U.S. 295, 306 (U.S. 1939). Moreover, CP has indicated that it is not requesting that the court set trackage rights terms, rather that the court void an improperly procured contract and punish corporate misconduct. However, Indiana case law, which is binding in this diversity matter, has indicated that the law of fiduciary duty in closely held corporation requires that the court determine whether the transaction (i.e., rental rates in the trackage agreement) was unfair to the corporation. *See G & N Aircraft, Inc.,* 743 N.E.2d at 239; *see also Melrose v. Capitol City Motor Lodge, Inc.,* 705 N.E.2d 985, 991 (Ind. 1998). Moreover, the Termination Act has preempted state law claims that were designed as a means of getting the court to apply state law to assess the substantive "fairness" of the contracts the railroads entered into, including with reference to the manner in which the rates were computed. *See Fayus Enters. v. BNSF Ry.,* 602 F.3d 444, 452 (D.C. Cir. 2010) (state law claims "would directly interfere with the ICCTA's deregulatory objectives," because those claims challenged the fairness of the railroads' contracts, including "the manner in which the rates were computed.").

CP has asserted that this state law action is not a trackage rights compensation case. However, CP's requests for relief regulate (i.e. terminate) the rental rates in the revised trackage

rights agreement. CP's requests for relief include: damages for breaches of fiduciary duties; punitive damages on the basis that the breaches of fiduciary duties were wanton, willful, intentionally oppressive, and/or malicious; disgorgement of any ill-gotten profits from IHB payments under the Revised Master Trackage Rights Agreement; voiding the Revised Master Trackage Rights Agreement; and entering an injunction compelling defendants to implement and enforce the IHB Board Resolution.

The Seventh Circuit has found that State regulation can be as effectively exerted through an award of damages as through some form of preventive relief. ***Wedemeyer v. CSX Transportation, Inc.,*** 850 F.3d 889, 897 (7th Cir. 2017); *See, e.g.*, ***Cipollone v. Liggett Grp., Inc.,*** 505 U.S. 504, 521, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); ***Thomas Tubbs, Tr. of the Thomas Tubbs Revocable Trust & Individually, & Dana Lynn Tubbs, Tr. of the Dana Lynn Tubbs Revocable Trust & Individually—Petition for Declaratory Order,*** FD 35792, 2014 WL 5508153, at *4 (S.T.B. Oct. 29, 2014) ("damages awarded under state tort laws can manage or regulate a railroad as effectively as the application of any other type of state statute or regulation"); *see* ***South Dakota ex rel. South Dakota R.R. Authority v. Burlington Northern & Santa Fe Ry. Co.,*** 280 F.Supp.2d 919, 934 (D.S.D. 2003) (finding that economic recoveries through tort claims could impact rates, routes, and services).

Moreover, in ***Thompson v. Texas Mexican Ry. Co.,*** 66 S.Ct. 937, 946–47, 328 U.S. 134, 150 (U.S. 1946), the Supreme Court found that under the federal regulatory scheme, the ICC, rather than courts or juries, should set trackage rights compensation. Under 49 U.S.C. § 11323(a)(6), the STB has plenary authority over trackage rights agreements between rail carriers and the authority, if necessary, to set the terms of compensation. ***Thompson,*** 328 U.S. at 145-47. The STB's authority is exclusive and extends to fixing the terms and conditions of the trackage

rights arrangement. *Thompson,* 328 U.S. at 147; *see also* ***Mexrail Inc. v. Union Pacific Railroad Company and Missouri Pacific Railroad Company,*** 2000 WL 967298, at *3 (STB July 13, 2000).

It is undisputed by the parties that the court may not set trackage rights compensation. Therefore, the court may not enter an injunction that compels the defendants to implement and enforce the IHB Board Resolution, which contained different rental rates. To reiterate, the STB has the authority to fix the terms of the trackage rights arrangement. *Thompson,* 328 U.S. at 147. Additionally, the court is unable to void the Revised Master Trackage Rights Agreement without determining that the rental rates were unfair. The court finds that CP's state tort law claim and the relief requested would unreasonably interfere with rail transportation, and therefore is preempted.

CP has argued that, as an aggrieved minority shareholder, it would have no recourse for the harm suffered. However, that argument does not negate what the Termination Act provides, Congress "grant[ed] the STB exclusive jurisdiction" and "has the power to eliminate state-law remedies and causes of action without providing federal substitues." ***Griffioen v. Cedar Rapids and Iowa City Railway Co.,*** 785 F.3d 1182, 1192 (8th Cir. 2015). The recourse available to a person aggrieved with respect to a matter that has been exempted under § 10505 is to petition for partial or complete revocation of the STB's approval of the notice of exemption. *See* **49 U.S.C. 10502(d).**

Next, the defendants have argued that CP's claims are preempted by § 11321(a) which permits carriers whose transaction has been "approved or exempted by the STB under this subchapter" to carry out the transaction "without the approval of a State authority." **49 U.S.C. § 11321(a)** (referring to Title 49, Chapter 113, Subchapter II). A rail carrier, corporation, or

person participating in that approved or exempted transaction is exempt from the antitrust laws and from all other law, including State and municipal law, as necessary to let that rail carrier, corporation, or person carry out the transaction. **49 U.S.C. § 11321(a).** "The authority of the STB under this subchapter is exclusive." **49 U.S.C. § 11321(a).** The statute makes the exemption self-executing whenever necessary to carry out an STB-approved transaction. **49 U.S.C. § 11321;** *Interstate Commerce Comm'n v. Bd. of Locomotive Eng'rs,* 482 U.S. 270, 298, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987).

The IHB, Conrail, CSXT, and NSR filed four combined verified notices of exemptions pursuant to the class exemption at 49 C.F.R. § 1180.2(d)(7) for trackage rights. ***Ind. Harbor Belt R.R. Co.,*** 2017 WL 992358, at *3. The STB granted the exemption from the procedures otherwise required under 49 U.S.C. §§ 11323 and 11324. Therefore, the Master Trackage Rights Agreement is an exempt transaction that falls within 49 U.S.C. § 11321(a). The immunity provision of § 11321 means what it says, "a carrier is exempt from *all law* as necessary to carry out an [STB]-approved transaction." **Hall v. Norfolk Southern Ry. Co.,** 469 F.3d 590, 598 (7th Cir. 2006).

Accordingly, CP's requests for relief would prevent the terms of the Revised Master Trackage Rights Agreement from being carried out. CP has not presented any argument to the contrary. The STB approved the terms of the Master Trackage Rights Agreement and pursuant to § 11321(a) the trackage agreement is an exempt transaction. The court could grant CP's requests for relief only by ignoring § 11321's clear exemption language or by modifying the terms of the STB-exempt agreement. *See **Hall,*** 469 F.3d at 599.

CP has alleged additional claims including: Count II aiding and abetting breach of fiduciary duties, Count III civil conspiracy to breach fiduciary duties, and Count IV vicarious

liability for breach of fiduciary duties. Indiana does not recognize aiding and abetting a breach of a fiduciary duty as a separate or independent tort, but as a theory of liability. *See* **Abrams v. McGuireWoods LLP,** 518 B.R. 491, 500 (N.D. Ind. 2014) (Indiana courts recognize aiding and abetting liability for the particular tort of breach of fiduciary duty); *see also* **DiMaggio v. Rosario,** 950 N.E.2d 1272, 1274 (Ind. Ct. App. 2011) (affirming trial court's grant of Rule 12(b)(6) dismissal on grounds that Indiana does not recognize a cause against third-party non-fiduciary for aiding fiduciary in breach of duty, but finding that even if such cause were recognized, complaint failed to sufficiently allege elements of underlying breach). Moreover, Indiana law requires an underlying tort to accompany its civil conspiracy allegations and vicarious liability claims. **Crystal Valley Sales, Inc. v. Anderson,** 22 N.E.3d 646, 656 (Ind. Ct. App. 2014); **Jass v. Prudential Health Care Plan, Inc.,** 88 F.3d 1482, 1490 (7th Cir. 1996). Therefore, the court finds that without a viable underlying tort, Counts II, III, and IV are not recoverable.

CP, as part of its breach of fiduciary duty claims, has requested that the court award IHB the O&M Expenses that Conrail was obligated to pay pursuant to the 1906 Agreement. The defendants have asserted that CP has not adequately alleged that Conrail owes O&M Expenses under the 1906 Agreement. Pursuant to N.D. Ind. L.R. 7-1(e) supporting and response briefs must not exceed 25 pages, while reply briefs must not exceed 15 pages. The parties each spent approximately 1 to 2 pages at the conclusion of their briefs discussing the issue of O&M Expenses. Therefore, it seems that given the limited amount of remaining space available, the parties proceeded in a cursory fashion on this issue. Accordingly, the court will allow an additional 14 days for the parties provide supplemental briefs on the issue of O&M expenses.

Based on the foregoing, the Motion of Defendants Consolidated Rail Corporation, Norfolk Southern Railway Company, and CSX Transportation, Inc., to Dismiss the Amended Complaint and to Dismiss or Strike the Amended Complaint's Requests for Relief [DE 77] is **GRANTED in part and DENIED in part.**

The parties' supplemental briefs discussing the issue of O&M Expenses are due 14 days from the date of this Order.

ENTERED this 29th day of March, 2018.

/s/ Andrew P. Rodovich
United States Magistrate Judge